## TERRE HAUTE, INDIANAPOLIS AND EASTERN TRACTION COMPANY *v.* PUCKETT.

[No. 12815.   Filed November 23, 1927.   Rehearing denied March 6, 1928.   Transfer denied July 1, 1932.]

*Hays & Hays,* and *Beasley, Douthitt, Crawford & Beasley,* for appellant.

*George G. Wells* and *Lindley & Bedwell,* for appellee.

ENLOE, J.—This action was brought by the appellee against the appellant to recover damages on account of personal injuries and property damage sustained by appellee, by reason of the automobile which he was driv-

ing coming into collision with an interurban car of appellant, at an alleged highway crossing near the city of Terre Haute.

The complaint herein was in two paragraphs. In the first paragraph, the sufficiency of which is not challenged on this appeal, the acts of negligence charged were,— (a), running two of its interurban cars so close together that the plaintiff was unable to hear the approach of the second car,—the one by which he was struck,—in time to avoid being struck and injured; (b), running said car at a high and dangerous rate of speed towards and over said crossing; and (c), running said car towards and over said crossing without giving any signal or warning of its approach. Specific enumerated injuries to the body of appellee were alleged to have been sustained, as was also the destruction of the automobile of the appellee, all as the result of said collision. Damages were asked covering both such personal injuries and property damage. This paragraph of complaint was met by an answer in denial.

The second paragraph of complaint, which was filed some time subsequent to the filing of the first paragraph, charged as an act of negligence, "that as plaintiff was driving said automobile along such intersecting highway and towards and upon such crossing as Stop 1½, as aforesaid, defendant was operating one of its interurban cars upon its interurban railroad, south from the city of Terre Haute, Indiana, and towards such crossing, and that the defendant then and there negligently operated such interurban car without maintaining upon the same a headlight that afforded sufficient illumination to enable a person in the vestibule of said interurban car, who possessed the usual visual capacity required of motormen, to see, in a clear atmosphere, a dark object as large as a man of average size, standing erect at a distance of at least 600 feet ahead of and in

front of such headlight, and, because of the negligence of said defendant in so operating said interurban car, at said time and place, said headlight failed to furnish a warning to this plaintiff, and such interurban car struck the automobile of plaintiff as aforesaid and injured the plaintiff as aforesaid."

The motion of the appellant that the appellee be required to make this paragraph of complaint more specific in certain designated particulars was overruled, as was also its demurrer thereto for want of facts, to which rulings exceptions were duly saved. Appellant then answered this paragraph by general denial. A trial of the issues thus formed resulted in a verdict and judgment against appellant, from which, its motion for a new trial having been overruled, it prosecutes this appeal. The errors assigned and presented are those hereinafter considered, and also other alleged errors which we deem not necessary to be considered in deciding this case.

We shall first notice said second paragraph of complaint. It is fundamental that each and every affirmative pleading should be drawn upon some definite theory—based upon some definite proposition of law—and, that when so drawn, it should be tested upon the theory upon which it was drawn. This inquiry involves the answering of two questions, viz: (a), Is the proposition of law upon which said pleading is supposed to be based applicable to the facts of the case as set forth in the pleading under consideration? and (b), the proposition of law being applicable to the supposed case, do the facts stated bring the pleader *within* his basic proposition of law?

We shall first examine said paragraph of complaint as to its *theory*. The record in this case clearly discloses that the trial court, and counsel for appellee, were of the opinion that the law required the appellant inter-

urban company to have its interurban cars equipped with a headlight which, after dark, in a clear atmosphere, would, when lighted, throw a *constant* beam of light along the track in front of said car sufficient to enable the motorman, he having the usual visual capacity, to see an object the size of a man of average size standing erect at a distance of 600 feet ahead of and in front of said car. It is the contention of counsel for appellee that an order of the Public Service Commission of Indiana, made and entered on January 5, 1922, fixing a standard for headlights on interurban cars, imposes upon appellant the duty as contended for by them. This contention requires an examination of the order in question, and also of the authority to make the order.

The General Assembly, in 1921 (Acts 1921, p. 659, §13288, Burns 1926), gave to the Public Service Commission additional powers as follows: "In addition to the powers heretofore granted to the Public Service Commission of Indiana, said commission is hereby specifically authorized and directed, as soon as practicable after the passage of this act, to investigate the condition and efficiency of headlights and whistles now in use on interurban railroads in this state, and if found to be inadequate for the protection of persons and property, or any other purpose, to investigate and determine what would be the most *practicable and efficient* headlight and whistles for all purposes, and when the commission shall have so determined, to make and enforce against the interurban companies such order or orders as may be found to be necessary to require the equipment and installation of such headlights and whistles on the interurban cars on the interurban railroads in this state, and to that end, said commission is given power in such investigation to examine the various kinds of lights and whistles that may be suitable for headlights and whistles

on interurban cars, and appliances therefor, to consult experts in such matters and to require the attendance of witnesses and the production of papers, documents, and appliances." (Our italics.)

It will be noted that the commission, in the matter of determining the kind of headlight to be designated, were, by the express wording of this statute, limited to the designating of a headlight which should be both *practicable and efficient,* and the commission, acting under said authority, on January 5, 1922, made and entered an order concerning headlights on interurban cars, the material portions of which, so far as this case is concerned, are as follows:—"The commission having caused investigation to be made and having conferred with the mechanical officials of many of the interurban properties in the State of Indiana, and being fully advised in the premises, is of the opinion that a more uniform headlight should be maintained, and it will be so ordered.

"IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA, that each interurban car used in road service between sunset and sunrise shall have a headlight which shall afford sufficient illumination *(with the standard voltage used on said interurban railroad)* to enable a person in the vestibule of said interurban car, who possesses the usual visual capacity required of motormen, to see, in a clear atmosphere, a dark object as large as a man of average size standing erect at a distance of at least 600 feet ahead of and in front of such headlight, and *such headlight must be maintained* at all times *in good working condition."* (Our italics.)

Does the above order relate to and fix the standard of headlights to be used on interurban cars with reference to the *constant intensity* of the days of light emitted therefrom—the constant "candle power"—, or, does it

attempt to fix and regulate such headlights with reference to the *capacity* of such headlights to utilize, to consume the electric current with which they are supplied when in use? Or, to state the question another way, does this order require that electric interurban cars, when operated at night, shall *at all times* when being so operated have thereon a headlight, the intensity, candle power, of which shall, at all times be such that a person of ordinary size may be seen at a distance of at least 600 feet in front of such car? Or, does the said order relate to and fix the standard of capacity of the assembled mechanism which we commonly call the headlight, to consume electric current?

It will be noted that the order in question in speaking of the headlight required, says: "with the standard voltage used on said interurban railroad," thereby clearly recognizing or contemplating that the current used to produce the light, should be taken from the trolley wire. The record in this case discloses that the electric current, for the headlight on the car in question, came from the trolley wire; that when a car thus equipped is standing still, the lights, both in the car and the headlight, are brighter, more intense, than when the car is running; that the intensity of light given off when the car is running, varies with the load carried, or "pull on the current," the heavier the load or pull the dimmer the light. The record also discloses that on the evening in question the traffic was heavy; that three interurban cars were being run on that occasion, a short distance, about 300 or 400 yards apart, to accommodate this traffic, and we can readily understand, from the facts disclosed by the record, why the headlight on the car in question was, at the time of said collision, of less intensity than usual. Also, there is no showing, nor attempt to show, that, *as to capacity*, the headlight, the assembled mechanism, was not of the

character required by the aforesaid order of the commission.

It is elementary that boards and commissions in exercising power conferred upon them by statute must, in the exercise of that power, be governed by the rules and principles of the common law. *Southern R. Co.* v. *Railroad Com.*, 172 Ind. 113, 87 N. E. 966. These rules and principles require that such power shall always be exercised in a reasonable manner. If not so exercised, any rule, order, or ordinance, contrary thereto will be, by the courts declared void. 6 R. C. L. p. 236, §226, and authorities cited. To construe said order as having reference to the "capacity" of the mechanism to utilize the electric current in the generating of light is entirely in harmony with the wording of said order, and with the authority under which said order was issued, and such a regulation would certainly be reasonable, while to construe it as having reference to and requiring a light of a fixed intensity, would render said order of very doubtful validity, and such a construction must be avoided, when another construction, one which would render said order reasonable in its application, may as readily and reasonably be had. We hold that said order did not fix, or attempt to fix, the *intensity* or *constant candle power* of the light in question, but only the *capacity* of the assembled mechanism to be used, headlight, to utilize electric current and to emit rays of light. It follows that said second paragraph of complaint was drawn upon a wrong theory and stated no cause of action. While the memorandum filed by the appellant with its demurrer to said paragraph of complaint did not point out the above noticed defect therein, yet the same question arises under the motion for a new trial, and as this cause must be reversed for other reasons, and as it may again be submitted to a jury for trial, we consider that

justice to all parties demands at our hands a consideration of the sufficiency thereof.

As hereinbefore stated, the first paragraph of complaint proceeds upon the theory that the crossing at which the appellee was struck and injured was a public highway crossing, and that the motorman in charge of appellant's car did not give any signal by bell, gong, or whistle, of the approach of said car to said crossing. The record in this case discloses an utter failure of evidence to sustain this theory. There is in the record a photograph of the crossing in question, and there is no contention that this photograph does not correctly represent the premises as of the time of the accident. It shows the crossing in question, the public highway running north and south, the right-of-way and tracks of appellant; that just to the west of appellant's tracks is a farm gate, the gate leaning against the gate-post to the south; that just to the west of this is a barn lot, and that to the south and west of the barn and barn lot, at the time of the accident, was a field of corn. One of the witnesses who testified in the case, and who testified that he was in charge of the said farm, also testified that he visited said premises daily about the time of the accident, that they kept horses in the barn lot and that they tried to keep the gate thereto closed. It conclusively appears from the record that the crossing in question was simply a private farm crossing for a private roadway leading from the said highway into said barn lot. It follows that there was no duty, under the facts conclusively shown by the evidence, on the part of the said motorman to sound whistle, bell or gong for said crossing.

The record also discloses that between the west edge of the pavement of the north and south road and the east rail of appellant's track at that point was a space of some forty to fifty feet; that appellee was traveling

south on said paved highway and upon reaching said farm crossing turned to the west to cross said tracks and enter said barn lot; that to the north of said farm crossing, and between the tracks of appellant and said highway, there is nothing to obstruct the view of a person who is approaching said farm crossing for a distance of from three to four hundred yards. The appellee testified as a witness in his own behalf and in substance testified as follows: that he was well acquainted with the crossing in question; that as he approached it he slowed down to make the turn; that it was a "square" turn; that he was not going over ten or twelve miles an hour; that as he approached the crossing he was not going over six or seven miles an hour; that he could have stopped his car in eight, ten, or twelve feet; that his hearing and eyesight were good; that when he made the turn and when approaching said crossing he was looking to the west; that he did not look up the tracks, to the north, either before or after he made the turn to said crossing; that there was nothing to prevent his looking and that if he had looked he could have seen the approaching car anywhere within a range of two to three hundred yards; that he never saw the car that hit him.

As to the alleged negligence in running two of its cars so close together that appellee was unable to hear the approach of the car by which he was struck, it will be noted that the complaint alleges that the said cars were run at a distance of about 100 feet apart, and at a high and dangerous rate of speed. There is no allegation in said complaint that the motorman in charge of appellant's said car saw the appellee prior to the time he turned into said driveway, or that he knew appellee would so turn, or of any negligence on the part of said motorman in failing to stop said car after appellee was discovered in a position of peril.

The testimony of appellee shows that the cars in question were running at a distance of about 400 yards apart, instead of 100 feet as alleged, and we know of no law which fixes the minimum of distance within which interurban cars must not be operated from each other. The rule of the common law governs and that requires, in such matter, the exercise of reasonable care only. The evidence wholly fails as to this allegation, and also as to the allegation concerning excessive speed.

At the close of all of the evidence the appellant requested the court to give to the jury an instruction to find in its favor; this request was refused, and this action of the court is presented as error.

This instruction should have been given. The appellee had not only failed to prove the material allegations of his complaint, but, upon his own testimony, he was clearly guilty of contributory negligence.

Judgment reversed with instructions to sustain the motion for a new trial, and for further proceedings consistent with this opinion.

Dausman, J., absent.

Remy, J., concurs in result.